## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS

Tracy Lynne Kirksey                                                                 Plaintiff

v.                              No. 3:14CV00176 DPM/JTR

Carolyn W. Colvin, Acting Commissioner,
Social Security Administration                                          Defendant

### Recommended Disposition

### Instructions

The following recommended disposition was prepared for U.S. District Judge D.P. Marshall.   A party to this dispute may file written objections to this recommendation.   An objection must be specific and state the factual and/or legal basis for the objection.   An objection to a factual finding must identify the finding and the evidence supporting the objection.   Objections must be filed with the clerk of the court no later than 14 days from the date of this recommendation.[1]   The objecting party must serve the opposing party with a copy of an objection.   Failing to object within 14 days waives the right to appeal questions of fact.[2]   If no objections are filed, Judge Marshall may adopt the recommended disposition without independently reviewing all of the record evidence.

---

[1] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

[2] *Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (failure to file objections waives right to de novo review and to appeal magistrate judge's findings of fact).

### Reasoning for Recommended Disposition

Tracy Lynne Kirksey seeks judicial review of the denial of her application for disability insurance benefits (DIB).[3]   Kirksey worked on an assembly for a shoe manufacturing plant for many years; she lost her job when the plant relocated to another state.[4]   After receiving unemployment benefits for about a year, she worked for a different plant for about six weeks.[5]   She says she quit that job due to unbearable pain.[6]   She then applied for DIB, basing disability on fibromyalgia, plantar fasciitis, carpal tunnel in left wrist, depression, anxiety, tremors, osteoarthritis, bone spurs in the shoulders and back bone, scoliosis, deterioration of the spine, and high blood pressure.[7]

**The Commissioner's decision**.   After considering the application, the Commissioner's ALJ determined Kirksey has severe impairments — fibromyalgia, mild osteoarthritis of left knee, degenerative disc disease of cervical spine status post fusion surgery, osteoarthrosis of the shoulders and knees, a history of carpal tunnel

---

[3]SSA record at p. 105 (applying on June 21, 2011 and alleging disability beginning June 4, 2011).

[4]*Id*. at pp. 14, 116, 155 & 313.

[5]*Id*. at p. 121.

[6]*Id*. at p. 13.

[7]*Id*. at p. 135.

syndrome with release surgeries, mood disorder/anxiety, and morbid obesity[8] — but she can do some sedentary work.[9]  Because a vocational expert identified available sedentary work,[10] the ALJ concluded that Kirksey is not disabled under the Social Security Act and denied the application.[11]

After the Commissioner's Appeals Council denied a request for review,[12] the decision became a final decision for judicial review.[13]  Kirksey filed this case to challenge the decision.[14]  In reviewing the decision, the court must determine whether substantial evidence supports the decision and whether the ALJ made a legal error.[15]

───────────────

[8]*Id*. at p. 46.

[9]*Id*. at p. 48.

[10]*Id*. at p. 38 (identifying jewelry preparer and document preparer as available work).

[11]*Id*. at p. 51.

[12]*Id*. at p. 1.

[13]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating, "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the appeal procedure permits claimants to appeal only final decisions).

[14]Docket entry # 1.

[15]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is

**Kirksey's allegations of error**.  Kirksey challenges the determination that she can do some sedentary work.  She contends the ALJ erred by failing to address her inability to ambulate effectively; she says the ALJ should have addressed listing 1.02. She maintains the ALJ erred by failing to address her ability to use her arms/hands; she claims carpal tunnel syndrome, neck surgery, arthritis in the shoulders, and essential tremors prevent her from using her arms/hands to perform fine and gross motor movements.  According to Kirksey, the ALJ should have given her doctor's opinion controlling weight.  She says the ALJ should have considered a closed period of disability following her neck surgery.  For these reasons, she maintains substantial evidence does not support the decision.[16]

**Applicable legal principles**.  For substantial evidence to support the decision, a reasonable mind must accept the evidence as adequate to show Kirksey can do some sedentary work.[17]  Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small

---

substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

[16]Docket entry # 11.

[17]*Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009); *Britton v. Sullivan*, 908 F.2d 328, 330 (8th Cir. 1990).

tools."[18]   Sedentary work "represents a significantly restricted range of work. Individuals who are limited to no more than sedentary work by their medical impairments have very serious functional limitations."[19]

The ALJ placed the following limitations on sedentary work:

(1) work requiring mostly sitting;

(2) no assembly line work;

(3) limited overhead reaching;

(4) frequent but not continuous reaching and handling;

(5) occasional climbing, stooping, kneeling, and crawling; and

(6) unskilled to the low end of skilled work.

The court must determine whether a reasonable mind would accept the evidence as adequate to show Kirksey can work with these limitations.  For the following reasons, a reasonable mind would accept the evidence adequate to support the decision:

1. **The evidence about fibromyalgia indicates Kirksey can do sedentary work**.  Fibromyalgia is the "inflammation of the fibrous or connective tissue (muscles, joints, ligaments, and tendons) of the body.  It is characterized by muscle pain, fatigue,

---

[18]20 C.F.R. § 404.1567(a) .

[19]SSR 96-9p, *Pol'y Interpretation Ruling Titles II & XVI: Determining Capability to Do Other Work--Implications of a Residual Functional Capacity for Less Than a Full Range of Sedentary Work*.

and multiple tender points on the body."[20] Kirksey was diagnosed with fibromyalgia in June 2010, the year before she claims she became disabled.[21]

"Fibromyalgia has no known cure. Therefore, the goal of treatment is successful symptom management."[22] A specialist prescribed medication, weight loss, and regular exercise.[23] According to Kirksey, the medication caused anxiety; she declined further treatment.[24] The specialist's recommendation for regular exercise contradicts Kirksey's claim of physical limitation and weighs against the credibility of her allegation of disabling limitation.[25]

Two years later, Kirksey's primary care provider (PCP) prescribed a different medication.[26] Kirksey reported good results.[27] A reasonable mind would accept the evidence as adequate to support the decision because: (1) the specialist prescribed

---

[20]Paula Ford-Martin, Michele R. Webb & Laura Jean Cataldo, 3 The Gale Encyclopedia of Med. 1728 (4th ed.).

[21]SSA record at p. 224.

[22]Paula Ford-Martin, Michele R. Webb & Laura Jean Cataldo, 3 The Gale Encyclopedia of Med. 1729 (4th ed.).

[23]SSA record at pp. 224 & 231.

[24]*Id*. at p. 224.

[25]*Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013).

[26]SSA record at p. 325.

[27]*Id*. at p. 320.

regular exercise, (2) Kirksey took no medication for two years, (3) she reported good results with medication, and (4) the evidence shows nothing preventing sedentary work.

2. **Osteoarthritis and osteoarthrosis do not prevent Kirksey from doing sedentary work**. "Osteoarthritis is a degenerative joint disease characterized by the breakdown of the joint's cartilage."[28]  It is often called as osteoarthrosis.[29]  "The condition is … more likely to occur in people who are overweight…."[30]  Kirksey is significantly over-weight.  She has osteoarthritis in the knees and shoulders.

Diagnostic imaging shows mild degenerative changes in the knees and shoulders.[31]  Kirksey's doctor warned her about the consequences of not losing

---

[28]Jennifer F. Wilson & Monique Laberge, 4 The Gale Encyclopedia of Med. 3181 (4th ed.).

[29]4-O Attorneys' Dictionary of Med. O-86880 (defining "osteoarthrosis" as "[j]oint disease marked by degeneration (deterioration) of parts of the joint; same as osteoarthritis").

[30]Jennifer F. Wilson & Monique Laberge, 4 The Gale Encyclopedia of Med. 3181 (4th ed.).

[31]SSA record at p. 214 (magnetic resonance imaging  showed some shoulder bursitis and  AC arthrosis and right knee plica and some chondromalacia, but nothing needing surgery; range of motion is sill quite good), p. 218 ((magnetic resonance imaging of right knee shows advanced patellofemoral disease with joint effusion and lateral plica.), p. 231 (magnetic resonance imaging of shoulders and knee show degenerative changes, but no inflammation), p. 261 (magnetic resonance imaging of left shoulder showing small amount of fluid in the subcromial bursa, probably due to mild bursitis and acromioclavicular joint arthrosis), p. 263 (magnetic resonance

weight: "[S]he's going to have to get serious about losing some weight to try to keep her knees from deteriorating further."[32]  Kirksey lost no weight.

Osteoarthritis is characterized by "aching pain in one or more joints, stiffness, and loss of mobility. In the knees, the disease can cause significant trouble walking and stair climbing."[33]  The ALJ required work that doesn't require a lot of walking or stair climbing.  The ALJ limited other activities that could aggravate the osteoarthritis in Kirksey's knees.

In the shoulders, osteoarthritis can cause pain when moving the arms; it can also limit range of motion.  Range of motion remained good; and muscle strength remained strong.[34]  A specialist prescribed an "exercise program to really work on the shoulders."[35]  There's no indication Kirksey followed that medical advice.  A claimant who fails to follow medical advice without good reason is not entitled to disability

---

imaging of right knee showing a lateral patellar plica and small effusion) & p. 264 (magnetic resonance imaging of left shoulder showing acromioclavicular joint arthrosis and mild supraspinatus tendinopathy).

[32]SSA record at p. 216.

[33]Jennifer F. Wilson & Monique Laberge, 4 The Gale Encyclopedia of Med. 3182 (4th ed.).

[34]SSA record at pp. 313, 335 & 373.

[35]*Id*. at p. 214.  *See also id*. at p. 231 (shoulders move well, difficulty with internal rotation, tenderness over trapezius muscles).

benefits.[36]  Nevertheless, the ALJ limited activities which would aggravate shoulder pain; the ALJ limited overhead reaching and eliminated continuous reaching and handling.  Treatment records reflect no problems with using the hands/arms to do fine or gross motor movements.

A reasonable mind would accept the evidence about osteoarthritis as adequate to support the decision because the ALJ limited, or eliminated, the types of activities that could aggravate osteoarthritis.  A reasonable mind would view Kirksey's failure to follow medical advice as inconsistent with her allegation of disabling pain.  To the extent Kirksey contends she meets listing 1.02 based on an inability to effectively ambulate, treatment notes contradict that claim.[37]

3.  **The evidence about carpal tunnel syndrome shows no disabling symptoms**.  "Carpal tunnel syndrome is a disorder caused by compression at the wrist of the median nerve supplying the hand, causing numbness and tingling."[38]  Work that requires a person to repeatedly bend the wrist inward toward the forearm can lead to

---

[36]*Tome v. Schweiker*, 724 F.2d 711, 713-14 (8th Cir. 1984).  *See* 20 C.F.R. § 404.1530 (DIB); 20 C.F.R. 416.930 (SSI).

[37]SSA record at p. 231 (normal gait), p. 313 (no difficulty walking, ambulates independently),p. 335 (ambulates independently), p. 373 (ambulates independently, no spasticity to gait) & p. 371 (ambulates independently, no spasticity to gait).

[38]Rosalyn Carson-DeWitt, 2 The Gale Encyclopedia of Med. 865 (4th ed.).

carpal tunnel syndrome.[39]  Severe cases of carpal tunnel syndrome require surgery to relieve the compression of the median nerve and restore normal function.[40]

Kirksey reported a remote history of carpal tunnel syndrome surgery — over 15 years before she claims she became disabled.[41]  The years Kirksey later worked on an assembly line evidence the success of the surgeries.  Kirksey's assembly line work may have caused some new carpal tunnel syndrome, because an August 2010 nerve conduction study shows some mild carpal tunnel syndrome in the left wrist;[42] Kirksey wears a wrist brace when she needs it.  A reasonable mind would accept the evidence about carpal tunnel syndrome as adequate to support the decision because Kirksey has mild carpal tunnel syndrome in one wrist, the ALJ eliminated assembly line work, and treatment records reflect no problems with the hands/arms preventing sedentary tasks.

4.  **The evidence about cervical disc disease shows successful, corrective surgery**.  "Cervical disk disease refers to a gradual deterioration of the spongy disks in the top part of the spine"[43] — the part in the neck.  Cervical disk disease affects

---

[39]*Id*. at p. 866.

[40]*Id*.

[41]SSA record at p. 235.

[42]*Id*. at p. 234.

[43]Greg Annussek, 2 The Gale Encyclopedia of Med. 921 (4th ed.).

everyone to some degree, often without causing any bothersome symptoms," but it can interfere with nerve functioning if a disc becomes herniated.[44] A herniated disc "can cause pain and limit movement. While symptoms primarily affect the neck, they can also occur in other parts of the body."[45]

Around the time Kirksey stopped working, diagnostic imaging showed a herniated disc.[46] Kirksey's neurosurgeon felt the herniation caused neck pain, as well as Kirksey's headaches and right shoulder pain.[47] The surgeon described Kirksey as "in otherwise good health."[48] The surgeon recommended surgery, but refused to do the surgery unless Kirksey stopped smoking.[49] Smoking cessation was necessary to ensure a successful surgery.[50] According to the surgeon, "It would be critical for her to stay off of cigarettes after the operation as well."[51]

Kirksey stopped smoking in order to have the surgery, but resumed smoking

---

[44]*Id.*

[45]*Id.*

[46]SSA record at p. 241.

[47]*Id.* at p. 313.

[48]*Id.* at p. 346.

[49]*Id.* at p 313.

[50]*Id.* at pp. 313-14.

[51]*Id.* at p. 314.

after her surgery.  The headaches and right shoulder pain resolved.[52]  Six months after

surgery, Kirksey was doing well; diagnostic imaging some healing, but healing was

not complete.[53]  The surgeon's earlier warning about smoking suggests healing was

delayed due to smoking.  Kirksey testified that she lost 45% of the left-to-right range

of motion in her neck,[54] but her surgeon reported a fairly good range of motion.[55]

Inconsistencies such as these weigh against Kirksey's credibility.[56]

A reasonable mind would accept the evidence about cervical disc disease as

adequate to support the decision because Kirksey did well after her surgery.  Kirksey

is not entitled to a closed period of disability[57] because nothing shows neck surgery

---

[52]*Id*. at p. 375.

[53]*Id*. at p. 371.

[54]*Id*. at p. 24.

[55]*Id*. at p. 371.

[56]*Partee v. Astrue*, 638 F.3d 860, 865 (8th Cir. 2011) ("The ALJ may discredit a claimant based on inconsistencies in the evidence."); *Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001) ("The ALJ may discount complaints of pain if they are inconsistent with the evidence as a whole.").

[57]*Harris v. Sec'y of Dep't of Health & Hum. Services*, 959 F.2d 723, 724 (8th Cir. 1992) ("[T]he Secretary can award Social Security disability benefits either on a continuing basis or for a 'closed period.'…[D]isability is not an "all-or-nothing" proposition; a claimant who is not entitled to continuing benefits may well be eligible to receive benefits for a specific period of time.").

prevented Kirksey from working for at least 12 continuous months.[58]

5. **Morbid obesity doesn't prevent Kirksey from doing sedentary work**. "Obesity is … a nonexertional impairment which might significantly restrict a claimant's ability to perform the full range of sedentary work."[59]  An obese person might have "limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling.  It may also affect ability to do postural functions, such as climbing, balanc[ing], stooping, and crouching."[60] Kirksey has a body mass index (BMI) of over 45.  A person with a BMI of over 40 is considered morbidly obese.  A reasonable mind would accept the evidence about Kirksey's weight as adequate to support the decision because the ALJ required sedentary work and limited postural functions, sedentary work doesn't require much physical exertion, and treatment notes reflect no limitations imposed by obesity.

6. **Mood disorder and anxiety are controlled with medication**.  Kirksey's PCP prescribes medication for depression and anxiety.  Treatment notes reflect no complaints of anxiety or depression.  The lack of complaint indicates the conditions impose no severe restrictions.  Kirksey reported no problems with following

---

[58]42 U.S.C. § 423(d)(1)(A) (defining disability).

[59]*Lucy v. Chater*, 113 F.3d 905, 909 (8th Cir. 1997).

[60]SSR 02-1p: Policy Interpretation Ruling Titles II & XVI: Evaluation of Obesity ¶ 8.

instructions or getting along with co-workers or authority figures. A reasonable mind would accept the evidence as adequate because the ALJ required unskilled to the low end of skilled work.

7. **The treating PCP opinion is unsupported**. Kirksey relies in significant part on her treating PCP's medical source statement.[61] Therein, the PCP reported disabling limitations. "A treating physician's opinion is given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence."[62] The PCP indicated the opinion was based on 2011 diagnostic imaging of the neck and back, and fibromyalgia. The opinion purported to cover the time period, 2008 to October 2012. The ALJ correctly observed that Kirksey worked during much of that time. Kirksey was not diagnosed with fibromyalgia until June 2010. Diagnostic imaging of the back was normal.[63] The imaging of the neck showed a herniated disc, but the herniation was surgically corrected. The PCP reported limitations were inconsistent with Kirksey's own reports. The ALJ properly discounted the opinion as unsupported and

---

[61]SSA record at p. 319.

[62]*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005).

[63]SSA record at p. 239.

inconsistent with other substantial evidence.[64]

### Conclusion and Recommendation

Substantial evidence supports the ALJ's decision.  The ALJ made no legal error.  For these reasons, the undersigned magistrate judge recommends denying Kirksey's request for relief (docket entry # 2) and affirming the Commissioner's decision.

Dated this 31st day of March, 2015.

_____
United States Magistrate Judge

---

[64]*Perkins v. Astrue*, 648 F.3d 892, 897-98 (8th Cir. 2011).